**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 18-62407-CIV-DIMITROULEAS

LACOSTE ALLIGATOR S.A., *et al.*,

      Plaintiffs,

vs.

4CASE4COVER4, *et al.*,

      Defendants.
_____/

**PLAINTIFFS' *EX PARTE* APPLICATION FOR ENTRY OF
TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
AND ORDER RESTRAINING TRANSFER OF ASSETS AND
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

      Plaintiffs, Lacoste Alligator S.A. and Lacoste S.A. (collectively "Lacoste" or "Plaintiffs"), hereby do apply, on an *ex parte* basis, for entry of a temporary restraining order and an order restraining transfer of assets, and upon expiration of the temporary restraining order, a preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto ("Defendants") pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a). In support thereof, Plaintiffs submit the following memorandum of law.

**I.    <u>INTRODUCTION</u>**

      Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling goods bearing counterfeits and infringements of Plaintiffs' trademarks at issue and/or unauthorized copies of Lacoste's copyrighted work within this district and throughout the United States by operating e-commerce stores via a third-party marketplace website under their seller identification names identified on Schedule "A" hereto (the "Seller IDs"). Specifically, Plaintiffs have obtained evidence clearly demonstrating that (a) Defendants are engaged in the advertising and sale of counterfeit and infringing versions of Plaintiffs' goods; and (b) Defendants accomplish their counterfeit and infringing sales through the use of, at least, the e-commerce stores.

Defendants' unlawful activities have deprived and continue to deprive Plaintiffs of their rights to determine the manner in which their trademarks and copyrighted work are presented to the public. Indeed, Defendants have and continue to wrongfully trade and capitalize on Plaintiffs' reputation and goodwill and the commercial value of Plaintiffs' intellectual property. Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiffs ongoing irreparable harm.

Moreover, each Defendant uses money transfer and/or retention/processing services with PayPal, Inc. ("PayPal") as a method to receive monies generated through the sale of counterfeit and infringing products. Plaintiffs seek to restrain the illegal profits generated by Defendants. In light of the inherently deceptive nature of the counterfeiting business, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained. The Lanham Act and Copyright Act allow Plaintiffs to recover the illegal profits gained through Defendants' distribution and sales of counterfeit and infringing goods. See 15 U.S.C. § 1117(a); 17 U.S. Code § 504. To preserve that disgorgement remedy, Plaintiffs seek an *ex parte* order restraining Defendants' assets, including specifically, funds transmitted through PayPal.

## II. STATEMENT OF FACTS

### A. Plaintiffs' Rights.

Plaintiff, Lacoste Alligator S.A., is the owner of all rights in and to the federally registered trademarks listed in Paragraph 4 of the Declaration of Michael Azran in Support of Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order (the "Lacoste Marks"), which are used in connection with the manufacture and distribution of quality goods in the categories identified therein. (Declaration of Michael Azran in Support of Plaintiffs' Application for Temporary Restraining Order ["Azran Decl."] ¶¶ 4-5, filed herewith.)

Additionally, Plaintiff, Lacoste S.A., is the owner of the Copyrighted Work entitled "2001 Lacoste Crocodile" under United States Copyrighted Work Registration No. VA 1-902-896 (the "Lacoste Copyrighted Work"). (Declaration of Erinda Marga in Support of Plaintiffs' Application for Temporary Restraining Order ["Marga Decl."] ¶¶ 4-5, filed herewith.) The Lacoste Copyrighted Work has been disseminated to consumers and Lacoste's large retail customers since at least 2002. (Id.; see also Certificates of Registration for the Lacoste Marks

2

and Lacoste Copyrighted Work attached Comp. Ex. 1 to the Compl., incorporated herein by reference.)

The Lacoste Marks are symbols of Plaintiffs' quality, reputation, and goodwill and have never been abandoned. (Azran Decl. ¶ 5.) Moreover, Plaintiffs have expended substantial time, money, and other resources developing, advertising, and otherwise promoting their trademarks and copyrighted work. (Azran Decl. ¶¶ 6-7; Marga Decl. ¶¶ 6-7.) Accordingly, Plaintiffs' Marks qualify as famous marks as the term is used in 15 U.S.C. § 1125(c)(1). Furthermore, Plaintiffs have extensively used, advertised, and promoted the Lacoste Marks and the Lacoste Copyrighted Work in the United States, and have carefully monitored and policed the use of their intellectual property at issue herein. (Azran Decl. ¶¶ 6-8; Marga Decl. ¶¶ 6-8.) As a result, members of the consuming public readily identify products bearing the Lacoste Copyrighted Work or sold under the Lacoste Marks as being quality merchandise sponsored and approved by Plaintiffs, and the Lacoste Marks have achieved secondary meaning as identifies of high quality products. (Id.)

**B.    Defendants Wrongfully Use Plaintiffs' Trademarks and Copyrighted Work.**

Defendants do not have, nor have they ever had, the right or authority to use the Lacoste Marks or the Lacoste Copyrighted Work for any purpose. (Azran Decl. ¶¶ 10, 13-14; Marga Decl. ¶¶ 10, 13-14.)  Despite their known lack of authority to do so, Defendants are promoting and otherwise advertising, selling and/or offering for sale, through their respective Seller IDs, products bearing counterfeit trademarks and/or infringing images that are confusingly similar to one or more of the Lacoste Marks and/or the Lacoste Copyrighted Work, without authorization ("Defendants' Goods). (Azran Decl. ¶¶ 10-14; Marga Decl. ¶¶ 10-14; see also Declaration of T. Raquel Wiborg-Rodriguez in Support of Plaintiffs' Application for Temporary Restraining Order ["Wiborg-Rodriguez Decl."] ¶ 2, filed herewith; Declaration of Kathleen Burns in Support of Plaintiffs' Application for Temporary Restraining Order ["Burns Decl."] ¶ 4, filed herewith; see also relevant web page captures from Defendants' e-commerce stores operating under the Seller IDs displaying the Lacoste branded items offered for sale ["Defendants' Seller IDs"] attached as Comp. Ex. 1 to the Burns Decl.)

Given Defendants' slavish copying, Defendants' Goods offered for sale and sold under identical marks or images are indistinguishable to consumers, both at the point of sale and post-sale. By using the Lacoste Marks and the Lacoste Copyrighted Work, Defendants have created a false association between their counterfeit and infringing goods and e-commerce stores, and

3

Lacoste. Such false association is in violation of 15 U.S.C. § 1125(a) and is causing and will continue to cause Plaintiffs irreparable harm.  (Azran Decl. ¶ 18; Marga Decl. ¶ 18.)

As part of their ongoing investigation regarding the sale of counterfeit and infringing products, Plaintiffs' counsel retained Invisible Inc to investigate the promotion and sale of counterfeit and infringing Lacoste branded products by Defendants and to obtain the available payment account data for the receipt of funds paid to Defendants for the sale of counterfeit and infringing versions of Lacoste branded products through the Seller IDs. (Azran Decl. ¶ 11; Marga Decl. ¶ 11; Burns Decl. ¶ 3; Wiborg-Rodriguez Decl. ¶ 2.)  Through eBay.com, Invisible Inc accessed the Internet based e-commerce stores operating under Defendants' Seller IDs, placed orders from each Defendant for the purchase of various products – all bearing counterfeits of, at least, one of Lacoste's trademarks at issue or infringements of Lacoste's copyrighted work at issue – and requested each product to be shipped to one of its addresses in the Southern District of Florida.  (Burns Decl. ¶ 4 and Comp. Ex. 1 thereto.)  Following the submission of each order, Invisible Inc finalized payment for the products ordered from Defendants via PayPal to Defendants' respective PayPal accounts identified on Schedule "A" hereto. (See id.)  At the conclusion of the process, the detailed web page captures and images of the products ordered via Defendants' Seller IDs were sent to Lacoste's representatives, Michael Azran and Erinda Marga, for inspection. (See Burns Decl. ¶ 4; Azran Decl. ¶ 12; Marga Decl. ¶ 12; Wiborg-Rodriguez Decl. ¶ 2.)

Lacoste's representatives, Michael Azran and Erinda Marga, who have the ability to identify the distinctions between genuine Lacoste branded merchandise and counterfeit and infringing copies of the same, conducted a review and visually inspected the detailed web page captures reflecting the Lacoste branded products identified and captured by Invisible Inc and determined the products were not genuine versions of Lacoste's goods.  (Azran Decl. ¶¶ 13-14; Marga Decl. ¶¶ 13-14.)

Section 45 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Also, using the "ocular test" of direct comparison, courts have found that even marks which are slightly modified from the registered marks copied are to be considered counterfeit marks. See Fimab-Finanziaria Maglificio vs. Helio Import/Export, Inc., 601 F. Supp. 1, 2 (S.D. Fla. 1983). A comparison of the Lacoste Marks and the Lacoste Copyrighted Work at issue to the marks and

4

designs used by Defendants in connection with the promotion and sale of Defendants' Goods reveals the obvious counterfeit and infringing nature of Defendants' Goods. (Compare Lacoste's Trademark and Copyright Registrations [Comp. Ex. 1 to the Compl.] with Defendants' Seller IDs [Comp. Ex. 1 to the Burns Decl.].) Defendants' Goods are being promoted, offered for sale, and sold by Defendants within this district and throughout the United States. (See Burns Decl. ¶ 4.) Defendants are making substantial sums of money by preying upon members of the general public, many of whom have no knowledge Defendants are defrauding them. Defendants are also falsely representing to consumers that their goods are genuine, authentic, endorsed, and authorized by Plaintiffs. Defendants' Internet activities amount to nothing more than illegal operations infringing on Plaintiffs' intellectual property rights. The Seller IDs and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Plaintiffs.

**III.     ARGUMENT**

    **A.     A Temporary Restraining Order is Essential to Prevent Immediate Injury.**

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). This is such a case.

Defendants herein fraudulently promote, advertise, sell, and offer for sale goods bearing counterfeits and infringements of the Lacoste Marks and/or unauthorized copies of the Lacoste Copyrighted Work via their e-commerce stores using the Seller IDs. Specifically, Defendants wrongfully use counterfeits and infringements of the Lacoste Marks and/or unauthorized copies of the Lacoste Copyrighted Work to increase consumer traffic to their illegal operations. By their actions, Defendants are creating a false association in the minds of consumers between Defendants and Lacoste. The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of Plaintiffs' intellectual property at issue and preserve the status quo until such time as a hearing can be held. See Dell Inc. v. BelgiumDomains, LLC, Case No. 07-22674 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

Absent a temporary restraining order without notice, Defendants can significantly alter the status quo before the Court can determine the parties' respective rights.  In particular, the Internet based e-commerce stores at issue are under Defendants' complete control.  Thus, Defendants have the ability to modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs. (See Wiborg-Rodriguez Decl. ¶ 3.)  Such modifications can happen in a short span of time after Defendants are provided with notice of this action. (Id.) Defendants can also easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiffs' Application for Temporary Restraining Order and thereby thwart the Court's ability to grant meaningful relief and can completely erase the status quo.  (Id.)  In short, absent a temporary restraining order, Defendants could completely erase the status quo. (Id.)  As Defendants engage in illegal counterfeiting and infringing activities, Plaintiffs have no reason to believe Defendants will make their assets available for recovery pursuant to an accounting of profits or will adhere to the authority of this Court any more than they have adhered to federal trademark law. (Id.)

Moreover, federal courts have long recognized that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an *ex parte* basis. Columbia Pictures Indus., Inc. v. Jasso, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"); see also ABS-CBN Corporation v. pinoytvtfc.com, Case No. 18-cv-62083-WPD (S.D. Fla. Sept. 6, 2018) (Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order).  This Court should prevent an injustice from occurring by issuing an *ex parte* temporary restraining order which precludes Defendants from continuing to display their infringing content via the e-commerce stores or modifying or deleting any related content or data.  Only such an order will prevent ongoing irreparable harm and maintain the status quo.

**B.     Standard for Temporary Restraining Order and Preliminary Injunction.**

In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same.  See Emerging Vision, Inc. v. Glachman, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing Siegel v. LePore, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) aff'd 234 F.3d 1163 (11th Cir. 2000)).  In order to

6

obtain a temporary restraining order or a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets). Lacoste's evidence establishes all of the relevant factors.

### 1. Probability of Success on the Merits of Plaintiffs' Claims.[1]
#### a) Likelihood of Success on Counterfeiting Claim.

Title 15 U.S.C. §1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." Lacoste must demonstrate (1) ownership of the trademarks at issue; (2) Defendants' use of the trademarks is without Plaintiffs' authorization; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' Goods. See 15 U.S.C. § 1114(1).

The first two elements are easily met. The Lacoste Marks are owned by Lacoste Alligator S.A. and registered on the Principal Register of the United States Patent and Trademark Office, and all but one[2] of the trademarks have become "incontestable" under 15 U.S.C. §§ 1058 and 1065. (Azran Decl. ¶ 4; see Lacoste Trademark Registrations at Comp. Ex. 1 to the Compl.) See Ocean Bio-Chem, Inc. v. Turner Network Television, Inc., 741 F. Supp. 1546, 1554 (S.D. Fla. 1990) ("Incontestable status provides conclusive evidence of the registrant's exclusive right to

---

[1] As noted in the Complaint (DE 1), Plaintiffs have limited their claims to Defendant 4case4cover4 ("Defendant Number 1"), Defendant kotaburis ("Defendant Number 2"), and Defendant noritfebrihastam0 ("Defendant Number 3") to false designation of origin (Count II), copyright infringement (Count III), common law unfair competition (Count IV) and common law trademark infringement Count V). However, the analysis of the likelihood of confusion factors in regards to Count I remain applicable as the test for liability to Counts II, IV, and V is identical – whether the public is likely to be deceived or confused by the similarity of the marks at issue. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992); Rolex Watch U.S.A., Inc. v. Forrester, No. 83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987).

[2] Trademark Registrations 4,932,958 is not incontestable.

use the registered mark, subject to §§ 15 and 33(b) of the Lanham Act."). Moreover, Defendants have never had the right or authority to use the Lacoste Marks. (Azran Decl. ¶¶ 10, 13-14.)

The Eleventh Circuit uses a seven-factor test in determining the third element, likelihood of confusion. See Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1506 (11th Cir. 1985). These factors, as outlined in Safeway Store, Inc. v. Safeway Discount Drugs, Inc., are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. See 675 F.2d 1160, 1164 (11th Cir. 1982); see also Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1303 (11th Cir. 1997).  The seven factors listed are to be weighed and balanced and no single factor is dispositive. (Id.)

**(1)     Strength of the Marks.**

The spectrum of protectability and strength for trademarks is divided into four primary types of designations: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992). Arbitrary or fanciful marks are the strongest and deemed inherently distinctive and entitled to protection. (See id.) It cannot be seriously disputed that Plaintiffs' Marks are strong, arbitrary and fanciful marks. (See Azran Decl. ¶ 4; Comp. Ex. 1 to the Compl.)

The Lacoste Marks have also acquired secondary meaning. Plaintiffs have expended substantial time, labor, skill, and expense in developing, advertising, and promoting the Lacoste Marks. (Azran Decl. ¶¶ 5-9.) The Lacoste Marks enjoy widespread recognition and are prominent in the minds of consumers.

**(2) Similarity of the Marks.**

Likelihood of confusion is greater when an infringer uses the exact trademark.  Turner Greenberg Assocs. v. C & C Imps., 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004).  Defendants are using marks that are identical to the Lacoste Marks. (Compare Lacoste's Trademark Registrations [Comp. Ex. 1 to the Compl.] with Defendants' Seller IDs [Comp. Ex. 1 to the Burns Decl.].)

**(3) Similarity of the Goods.**

"The greater the similarity between the products and services, the greater the likelihood of confusion." John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 976 (11th Cir. 1983). Defendants are selling the same types of goods Plaintiffs sell. (Azran Decl. ¶¶ 4-5; see generally

8

Defendants' Seller IDs, attached as Comp. Ex. 1 to the Burns Decl.) Because they bear counterfeits of the Lacoste Marks, Defendants' Goods appear virtually identical to Lacoste's genuine products in the consumer market. Standing alone, this similarity can be held sufficient to establish a likelihood of confusion. See John H. Harland Co., 711 F.2d at 976.

### (4) Similarity of Sales Method and (5) Advertising Method.

Convergent marketing channels increase the likelihood of confusion. See Turner Greenberg Assocs., 320 F. Supp. 2d at 1332. Both Lacoste and Defendants sell and advertise their products using at least one of the same marketing channels, the Internet, in the same geographical distribution areas within the United States, including the Southern District of Florida. (See Azran Decl. ¶¶ 4-5; Burns Decl. ¶ 4.) Thus, the conditions of purchase for both parties are unmistakably identical. Moreover, both target the same general U.S. consumers, and as such, Lacoste is directly competing with Defendants' products.

### (6)     Defendants' Intent.

This district has held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" Turner Greenberg Assocs., 320 F. Supp. 2d at 1333, citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999). In a case of clear-cut copying, it is appropriate to infer Defendants intended to benefit from Lacoste's reputation, to Plaintiffs' detriment. See Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Florida, 546 F. Supp. 987, 996 (S.D. Fla. 1982).

### (7) Evidence of Actual Confusion.

Actual confusion is unnecessary to establish infringement since the test is likelihood of confusion.  See Frehling Enters. v. Int'l Select Group, Inc., 192 F.3d 1330, 1340 (11th Cir. 1999). In this case, however, it is reasonable to infer actual confusion exists in the marketplace based upon the circumstantial evidence available. Defendants are offering to sell and selling counterfeit goods identical in appearance to those sold by Lacoste. (Azran Decl. ¶¶ 4, 10-14; Burns Decl. ¶ 4 and Comp. Ex. 1 thereto.) Even if buyers are told of the bogus nature of Defendants' Goods, other consumers viewing Defendants' Goods in a post-sale setting will be confused, because they are viewing goods bearing the Lacoste Marks, which undeniably creates the impression they are viewing genuine goods sold or authorized by Plaintiffs. Such post-sale confusion is entirely actionable.  See Remcraft Lighting Products, Inc. v. Maxim Lighting, Inc.,

706 F. Supp. 855, 859 (S.D. Fla. 1989) ("The likelihood of confusion need not occur at wholesale level when the end user will be confused.").

The seven factors weigh only in Lacoste's favor. Lacoste has therefore shown a probability of success on the merits of their trademark counterfeiting and infringement claim.

### b) Likelihood of Success on False Designation of Origin Claim.

As with a trademark infringement claim, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. at 780. Whether the violation is called infringement or false designation of origin, the test is identical -- is there a "likelihood of confusion?" Id. Because Lacoste has established the merits of their trademark counterfeiting and infringement claims, a likelihood of success is likewise established as to Plaintiffs' claim for false designation of origin.

### c) Likelihood of Success on Plaintiffs' Copyright Claim.[3]

Once a copyright infringement action has been properly commenced, the copyright holder must prove two elements in order to prevail: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282 (1991). The manufacture, distribution and/or sale of an unauthorized copy that is substantially similar to a protected work is an infringement of the copyrighted work. See 17 U.S.C. § 106, 501(a).

In the instant matter, it cannot be disputed that Lacoste S.A. is the owner of the Lacoste Copyrighted Work. (See Marga Decl. ¶ 4; Lacoste Copyright Registration attached as Comp. Ex. 1 to the Compl. [DE 1-1], incorporated herein by reference.) The Copyrighted Work protects a work on a 2-dimensional drawing - entitled "2001 Lacoste Crocodile" (See id.) The registration serves as *prima facie* evidence of validity and ownership. See S. Bell v. Associated

---

[3] As noted in the Complaint (DE 1), Plaintiffs have limited their claims to Defendant agisantos9 ("Defendant Number 27"), Defendant ahbr08 ("Defendant Number 28"), Defendant candrefend_0 ("Defendant Number 29"), Defendant daviefend_0 ("Defendant Number 30"), Defendant dealshd ("Defendant Number 31"), Defendant fasangig0 ("Defendant Number 32"), Defendant hermagumilan0 ("Defendant Number 33"), Defendant iddiv_db8gbya ("Defendant Number 34"), Defendant indaparamit-0 ("Defendant Number 35"), Defendant jiwsak_im0limbq4 ("Defendant Number 36"), and Defendant prefe0 ("Defendant Number 37") to trademark counterfeiting and infringement (Count I), false designation of origin (Count II), common law unfair competition (Count IV) and common law trademark infringement Count V).

Tel. Directory, 765 F.2d 801 (11th Cir. 1985). Accordingly, the only question is whether Defendants copied Lacoste's protected work. However, based upon the evidence before the Court, Defendants' copying of the Lacoste Copyrighted Work is also beyond dispute. (Compare Lacoste Copyright Registration with Defendants' Seller IDs.)

The Eleventh Circuit has held as follows regarding proof of copyright infringement:

> As a factual matter, a proof of copying may be shown either by direct evidence, or, in the absence of direct evidence, it may be inferred from indirect evidence demonstrating that the defendant had access to the copyrighted work and that there are probative similarities between the allegedly infringing work and the copyrighted work.

MiTek Holdings, Inc. v. Arce Eng'g Co., Inc., 89 F.3d 1548 (11th Cir. 1996). Defendants' infringing design bears an identical likeness to the Lacoste Copyrighted Work, clearly violating the Lacoste Copyrighted Work. (See Marga Decl. ¶ 4; see generally Defendants' Seller IDs.) To find that Defendants' infringing item bears a copy of the Copyrighted Work, the Court need only find that the infringing item bears a "substantial similarity" to the Copyrighted Work. Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1544 n. 25 (11th Cir. 1996). Indeed, although it exists in this case, duplication or near identically is not necessary to establish infringement. See id. Moreover, substantial similarity is not to be determined through dissection or with the aid of expert testimony, but by the "ordinary observer." See Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 829 (11th Cir. 1982) (citations omitted). Herein, Defendants' infringing works cannot be distinguished from the Lacoste Copyrighted Work.

There can be no question that Defendants had access to copy the Lacoste Copyrighted Work. It is well established that an "overwhelming" inference of access arises when a copy is virtually identical to the copyrighted work. Evans v. Wallace Berrie & Co., 681 F. Supp. 813, 818 (S.D. Fla. 1988) (citing 3 Nimmer on Copyright § 13.02(B), 13-15 and 13-16 n.20.2). See also Corwin v. Walt Disney Co., 475 F.3d 1239, 1253 -1254 (11th Cir 2007) ("Where a plaintiff cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar."). Since Defendants' unauthorized products actually bear an exact copy of the Lacoste Copyrighted Work, an "overwhelming" inference of access arises, which is impossible for Defendants to dispute.

Alternatively, access may be shown simply by longstanding and wide dissemination of a copyrighted item and its derivations. See Selle v. Gibb, 741 F.2d 896, 901 (7th Cir.1984);

ABKCO Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d 988, 998 (2d Cir.1983); R. Dakin & Co. v. Charles Offset Co., Inc., 441 F. Supp. 434, 438-39 (S.D.N.Y.1977) (use of copyrighted work in national advertising campaign sufficient to show access); 3 Nimmer s 13.02(A), p. 13-12.  By this test, access is easily established by virtue of the dissemination of the Lacoste Copyrighted Work beginning in 2002 to Lacoste's large retail customers. (Marga Decl. ¶¶ 4-9.)

The existence of "substantial similarity" and access by Defendants establishes the likenesses of the work depicted on Defendants' products infringe the Lacoste Copyrighted Work. Once the existence of infringement is established, Defendants are liable for their activities in manufacturing, distributing, displaying, and/or selling the infringing items. Therefore, Lacoste has shown a probability of success on the merits of their copyright infringement claim.

### d) Likelihood of Success on Plaintiffs' Common Law Unfair Competition Claim and Common Law Trademark Infringement Claim.

The analysis of liability for Florida common law unfair competition and common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. Rolex Watch U.S.A., Inc. v. Forrester, No. 83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in John H. Harland, Inc. v. Clarke Checks, Inc., 711 F.2d 966, 972 (11th Cir. 1983.)".); PetMed Express, Inc., 336 F. Supp. 2d at 1217-18. As Lacoste has established a likelihood of confusion regarding Defendants' use of the Lacoste Marks, they have also have established the merits of their common law claims.

### 2. Plaintiffs are Suffering Irreparable Injury.

As the Eleventh Circuit expressed it: "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." Ferrellgas Ptnrs., L.P. v. Barrow, 143 Fed. Appx., 180, 191 (11th Cir. 2005) (citing McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998). A finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where Plaintiffs have demonstrated they will lose control of their reputation as a result of Defendants' activities. Id. A likelihood of confusion exists herein, because Defendants have engaged in counterfeiting and infringing activities using spurious designations indistinguishable from the Lacoste Marks and/or the Lacoste Copyrighted Work.

### 3. The Balance of Hardship Tips Sharply in Plaintiffs' Favor.

Plaintiffs have expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the Lacoste Marks and the Lacoste Copyrighted Work. (Azran Decl. ¶¶ 4-9; Marga Decl. ¶¶ 4-9.) Should Defendants be permitted to continue their trade in counterfeit and infringing goods, Plaintiffs will suffer substantial losses and damage to their reputation.  (See id. at ¶ 18.) However, Defendants will suffer no legitimate hardship in the event a temporary restraining order is issued, because Defendants have no right to engage in their present counterfeiting and infringing activities.

### 4. The Relief Sought Serves the Public Interest.

Defendants are engaged in criminal activities and are directly defrauding the consuming public by palming off Defendants' Goods as Lacoste's genuine goods. The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. See Nailtiques Cosmetic Corp. v. Salon Sciences, Corp., 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla.1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").

## C.     The Equitable Relief Sought is Appropriate.

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### 1. Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiffs' Intellectual Property at Issue is Appropriate.

Plaintiffs request an order requiring Defendants immediately cease all use of the Lacoste Marks and the Lacoste Copyrighted Work, or substantially similar marks and works, on or in connection with all e-commerce stores owned and operated, or controlled by them. Such relief is necessary to stop the ongoing harm to Plaintiffs' goodwill and to prevent Defendants from continuing to benefit from the increased consumer traffic to their illegal operations created by their unlawful use of Plaintiffs' intellectual property at issue.  Many courts, including this Court, have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks.[4]

---

[4] See ABS-CBN Corporation v. pinoytvtfc.com, Case No. 18-cv-62083-WPD (S.D. Fla. Sept. 6, 2018) (Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order); Goyard

## 2. Entry of an Order Prohibiting Transfer of the Seller IDs During the Pendency of this Action is Appropriate.

To preserve the status quo, Lacoste seeks an order temporarily modifying control of and prohibiting Defendants from transferring use or control of the Seller IDs being used and controlled by Defendants to other parties. Defendants operating via online e-commerce platforms, once they become aware of litigation against them, easily can, and often will, modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of Seller IDs, and thereby thwart the Court's ability to grant meaningful relief. (Wiborg-Rodriguez Decl. ¶ 3.) Here, an interim order prohibiting Defendants from transferring their e-commerce stores operating under the Seller IDs poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Lacoste full relief.[5]

## 3. An *Ex Parte* Order Restraining Transfer of Assets is Appropriate.

In addition, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets. Lacsote has demonstrated above that they will likely succeed on the merits of their claims. As such, under 15 U.S.C. § 1117 and 17 U.S.C. § 504,[6] Plaintiffs will be entitled to an accounting and payment of profits earned by Defendants throughout the course of

---

St-Honore v. Abraham Ben, Case No. 18-cv-61771-WPD (S.D. Fla. Aug. 2, 2018) (same); adidas AG et al v. Anngoo, Case No. 18-cv-61589-WPD (S.D. Fla. July 16, 2018) (same); Gucci America, Inc. v. (fujian)keji, Case No. 18-cv-60727-WPD (S.D. Fla. April 6, 2018) (same). See also Gucci America, Inc. v. a.m.m.mall, Case No. 18-cv-62229-UU (S.D. Fla. Sept. 21, 2018) (same); Apple Corps Limited v. Awesome Covers Store, Case No. 18-cv-61524-BB (S.D. Fla. July 10, 2018) (same); Louis Vuitton Malletier, S.A. v. Amalphasell, Case No. 18-cv-61167-JIC (S.D. Fla. May 29, 2018) (same).

[5] See e.g., ABS-CBN Corporation v. pinoytvtfc.com, Case No. 18-cv-62083-WPD (S.D. Fla. Sept. 6, 2018) (prohibiting Defendants from transferring domain names during pendency or until further Order of the Court); Goyard St-Honore v. Abraham Ben, Case No. 18-cv-61771-WPD (S.D. Fla. Aug. 2, 2018) (prohibiting Defendants from transferring e-commerce stores during pendency or until further Order of the Court); adidas AG et al v. Anngoo, Case No. 18-cv-61589-WPD (S.D. Fla. July 16, 2018) (same); Gucci America, Inc. v. (fujian)keji, Case No. 18-cv-60727-WPD (S.D. Fla. April 6, 2018) (same). See also Gucci America, Inc. v. a.m.m.mall, Case No. 18-cv-62229-UU (S.D. Fla. Sept. 21, 2018) (same); Apple Corps Limited v. Awesome Covers Store, Case No. 18-cv-61524-BB (S.D. Fla. July 10, 2018) (same); Louis Vuitton Malletier, S.A. v. Amalphasell, Case No. 18-cv-61167-JIC (S.D. Fla. May 29, 2018) (same).

[6] Additionally, Section 502 empowers the Court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."

their infringing scheme. Due to the deceptive nature of the counterfeiting and infringing business, and Defendants' deliberate violations of federal intellectual property laws, Plaintiffs respectfully request this Court grant additional *ex parte* relief restraining the transfer of all monies held or received by PayPal for the benefit of any one or more of the Defendants. See International Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc., 80 F.3d 749 (2d Cir. 1996); see also SEC v. ETS Payphones, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case).

This Court has broad authority to grant such an order. The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in cases where an equitable interest is claimed. Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 144 L. Ed. 2d 319, 119 S. Ct. 1961 (1999). Moreover, almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to courts to restrain assets *pendente lite.* See Mason Tenders Dist. Council Pension Fund v. Messera, 1997 WL 223077 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all the Circuit Courts have held that Rule 65 is available to freeze assets *pendente lite* under some set of circumstances").

In light of the illicit nature of the counterfeiting business and the ability of counterfeiters to practically eliminate evidentiary trails by conducting their business entirely over the Internet, courts in the Eleventh Circuit, among others, have particularly noted the significance of such asset restraints in cases involving counterfeiting defendants. See, e.g. Levi Strauss & Co. v. Sunrise Int'l Trading, 51 F.3d 982 (11th Cir. 1995); Reebok Int'l Ltd. v. Marnatech Enter., 737 F. Supp. 1515 (S.D. Cal. 1989), aff'd, 970 F.2d 552 (9th Cir. 1992). In Levi Strauss, the Eleventh Circuit upheld an order granting an asset restraint against an alleged counterfeiter where the complaint included a request for a permanent injunction and the equitable remedy of disgorgement of the alleged counterfeiter's profits under 15 U.S.C. § 1117. Levi Strauss, 51 F.3d at 987. Distinguishing Levi Strauss from two earlier cases not involving Lanham Act claims, the Court emphasized the necessity of the restraint holding that a "request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." Id. citing Federal Trade Commission v. United States Oil and Gas Corp., 748 F.2d 1431, 1433-34 (11th Cir.1984)

15

(district court may exercise its full range of equitable powers, including a preliminary asset restraint, to ensure that permanent equitable relief will be possible). Indeed, courts may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that serves as a basis for the equitable relief requested.  See S. E. C. v. Lauer, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006) (noting that there is no requirement for the restrained assets be traceable to the fraudulent activity underlying a lawsuit); Levi Strauss & Co. v. Sunrise Int'l Trading, 51 F.3d at 987-88 (upholding asset restraint, including assets not linked to the profits of the alleged illegal activity, noting the defendants may request the court exempt any particular assets); Kemp v. Peterson, 940 F.2d 110, 113-14 (4th Cir. 1991) (district court may restrain assets not specifically traced to illegal activity).[7]

Similarly, in Reebok v. Marnatech, the District Court granted Reebok a limited restraint of the defendants' assets for the purpose of preserving those assets, thus ensuring the availability of a meaningful accounting after trial. Reebok Int'l Ltd., 737 F. Supp. at 559. In affirming the decision, the Ninth Circuit determined that the plaintiff met its burden of demonstrating: (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) that defendants might hide their allegedly ill-gotten profits if their assets were not frozen. Reebok Int'l Ltd., 970 F.2d 552, 563 (9th Cir. 1992). Moreover the Court reasoned: "because the Lanham Act authorizes the District Court to grant Reebok an accounting of [Defendant's] profits as a form of final equitable relief, the District Court has the inherent power to freeze [Defendant's] assets in order to ensure the availability of that final relief." Reebok Int'l Ltd., 970 F.2d. at 559; see also, Republic of Philippines v. Marcos, 862 F.2d 1355, 1364 (9th Cir. 1988), cert. denied, 490 U.S. 1035 (1989) ("[a] court has the power to issue

---

[7] See e.g., ABS-CBN Corporation v. pinoytvtfc.com, Case No. 18-cv-62083-WPD (S.D. Fla. Sept. 6, 2018) (Order granting TRO and restraining funds held or received by advertising services to preserve assets to satisfy Plaintiffs' requested relief); Goyard St-Honore v. Abraham Ben, Case No. 18-cv-61771-WPD (S.D. Fla. Aug. 2, 2018) (Order granting TRO requiring, *inter alia*, PayPal, Inc. to restrain the funds in defendants' payment accounts to preserve assets to satisfy Plaintiff's requested relief); adidas AG et al v. Anngoo, Case No. 18-cv-61589-WPD (S.D. Fla. July 16, 2018) (same); Gucci America, Inc. v. (fujian)keji, Case No. 18-cv-60727-WPD (S.D. Fla. April 6, 2018) (same).  See also Gucci America, Inc. v. a.m.m.mall, Case No. 18-cv-62229-UU (S.D. Fla. Sept. 21, 2018) (same); Apple Corps Limited v. Awesome Covers Store, Case No. 18-cv-61524-BB (S.D. Fla. July 10, 2018) (same); Louis Vuitton Malletier, S.A. v. Amalphasell, Case No. 18-cv-61167-JIC (S.D. Fla. May 29, 2018) (same).

a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies").

Using the power to issue provisional remedies ancillary to their authority to provide final equitable relief, numerous courts have granted orders restraining defendants from transferring their assets under trademark infringement claims. See e.g. Levi Strauss, 51 F.3d at 987; Reebok Int'l Ltd., 970 F.2d at 559. Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Specifically, federal courts have held that where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued *ex parte*. See F.T. Int'l Ltd v. Mason, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); CSC Holdings, Inc. v. Greenleaf Elec., Inc., 2000 WL 715601 (N.D. Ill. 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets).

In this case, Defendants' blatant violations of federal intellectual property laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets. Also, as Defendants' business is conducted almost entirely over the Internet, Plaintiffs have additional cause for *ex parte* relief, as Defendants may easily secret or transfer assets without the Court's or Plaintiffs' knowledge.

### D. A Bond Should Secure the Injunction.

Because of the strong and unequivocal nature of Plaintiffs' evidence of counterfeiting and infringement, Plaintiffs respectfully request this Court require them to post a bond of no more than ten thousand dollars ($10,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice. The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

## IV. CONCLUSION

In view of the foregoing, Plaintiffs respectfully request this Court grant their e*x parte* application and enter a temporary restraining order in the form submitted herewith and schedule a hearing on Plaintiffs' Motion for a Preliminary Injunction before the expiration of the temporary restraining order. Additionally, due to the time provisions of a temporary restraining order, in the event the application is granted, Plaintiffs respectfully request the Court provide a copy of the temporary restraining order to Plaintiffs' counsel via e-mail at raquel@smgpa.net so

that Plaintiffs may immediately effectuate any relief ordered therein and provide Defendants' proper notice of the order and any subsequent hearing date.

DATED: October 10, 2018.   Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **s/T. Raquel Wiborg-Rodriguez**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
Facsimile: (954) 767-4821
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiffs

## SCHEDULE "A"
## DEFENDANTS BY NUMBER, SELLER ID, AND PAYPAL ACCOUNT

| Def. No. | Defendant / Seller ID | PayPal Account |
|---|---|---|
| 1 | 4case4cover4 | dzene.agnese@inbox.lv |
| 2 | kotaburis | sekultabur@gmail.com |
| 3 | noritfebrihastam0 | febrihastaminorita@yahoo.com |
| 4 | angintopan98 | dwi.gunadi@outlook.com |
| 5 | bakucasin0 | bakul.casing93@gmail.com |
| 6 | bardenbella | cityofstarsss@hotmail.com |
| 7 | brialada_0 | brain.ladan@gmail.com |
| 8 | dariadity_0 | darioaditya@yahoo.com |
| 9 | derefend_0 | deriunto@gmail.com |
| 10 | distwirawa-0 | diswirawan08@gmail.com |
| 11 | dvinechemi_0 | dvirofficial@gmail.com |
| 12 | eduba_6 | eduardbalan271@gmail.com |
| 13 | ekwirawa_8 | wirawaneko23@gmail.com |
| 14 | global*village | jacob.stanley9@icloud.com |
| 15 | harrwilkin_3 | Trevor2222HGAIN@outlook.es |
| 16 | hendrsety_0 | hendrysetya930@gmail.com |
| 17 | juaja4 | jual.jam92@gmail.com |
| 18 | kizulf-0 | kikizulfikri12@gmail.com |
| 19 | maikefros_0 | maikelfaris121@gmail.com |
| 20 | nopipio00 | novita_cah@hotmail.com |
| 21 | pasangig0 | pasanggigi2@gmail.com |
| 22 | qodeefend0 | juyang25@gmail.com |
| 23 | rizkstorewatc_0 | rizkastore08@gmail.com |
| 24 | shimishu10 | haayee283@gmail.com |
| 25 | tudbae_0 | tudi.baeh91@gmail.com |
| 26 | wandiagaunoshop | wandiagaefendi@gmail.com |
| 27 | agisantos9 | agitsantoso97@gmail.com |
| 28 | ahbr08 | achmady.brih@gmail.com |
| 29 | candrefend_0 | kurokuro837@gmail.com |
| 30 | daviefend_0 | chihiroc721@gmail.com |
| 31 | dealshd | nokiahtc20@gmail.com |
| 32 | fasangig0 | pasanggigi3a@gmail.com |
| 33 | hermagumilan0 | hermangumilang99@gmail.com |
| 34 | iddiv_db8gbya | divvae11@gmail.com |
| 35 | indaparamit-0 | indah.paramita106@gmail.com |
| 36 | jiwsak_im0limbq4 | sakkiet32@gmail.com |
| 37 | prefe0 | suhartoprio@gmail.com |